IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>PAUL LYN NISBET,<br><br>Defendant. | CR 15-40-M-DLC<br><br>FINDINGS &<br>RECOMMENDATION |

On October 27, 2016, Chief Judge Dana L. Christensen sentenced Defendant Paul Lyn Nisbet to 14 months of incarceration and three years of supervised release following his guilty plea to one count of conspiracy in violation of 18 U.S.C. § 371. Judge Christensen deferred making a determination of restitution, and subsequently referred this matter to the undersigned pursuant to 18 U.S.C. § 3664(d)(5-6) for the limited purpose of purpose of conducting a hearing on all matters related to restitution and determining an appropriate amount of

restitution. The Court held a restitution hearing on November 16, 2016. For the reasons set forth below, no restitution should be imposed against Nisbet.

I. **Background**

Nisbet served as the chief financial officer for Vann's Inc., a Montana corporation that was in the business of selling home electronics and appliances until it filed for bankruptcy in August 2012. Nisbet was also a member of Vann's board of directors, and a trustee of the company's employee stock ownership plan ("ESOP"). Nisbet's co-defendant, George Manlove, was Vann's former chief executive officer, and also served as chairman of the board of directors and as a trustee of Vann's ESOP.[1]

In June 2016, Nisbet pled guilty to one count of conspiracy as set forth in the second superseding indictment. Nisbet admitted that from January 2006 until February 2013, he knowingly conspired to defraud Vann's, its ESOP beneficiaries, and others of the company's assets for personal gain by committing wire fraud, bank fraud, false statements, bankruptcy fraud, money laundering, and aiding and abetting the same, all in violation of the laws of the United States. Nisbet further admitted to the government's first forfeiture allegation, thereby acknowledging

---

[1] Manlove is set to go to trial on the charges against him in early January 2017.

that the amount of $122,250 was property constituting or deriving from proceeds he obtained directly from the conspiracy.

There is no dispute that restitution in this case is mandatory under the Mandatory Victims Restitution Act of 1996, 18 U.S.C. §§ 3663A-3664 ("MVRA"). The government seeks restitution on behalf of five former ESOP participants in the amount of $435,901 for lost wages and loss of stock value. The government also seeks restitution on behalf of all ESOP participants for more than $3 million in attorney fees and costs incurred in a civil suit against Nisbet and Manlove.

## II    Legal Standards Governing Restitution

The MVRA requires the district court to "order restitution to each victim in the full amount of each victim's losses as determined by the court." 18 U.S.C. § 3664(f)(1)(A). "Any dispute as to the proper amount or type of restitution shall be resolved by the court by a preponderance of the evidence." 18 U.S.C. § 3664(e). Under this standard, "[t]he government bears the burden of proving that a person or entity is a victim for purposes of restitution, and of proving the amount of the loss." *United States v. Waknine*, 543 F.3d 546, 556 (9th Cir. 2008). The government also bears the burden "of establishing by a preponderance of the evidence that the victim's damages were caused by the conduct of which the

defendant was convicted." *United States v. Peterson*, 538 F.3d 1064, 1074-75 (9th Cir. 2008).

The statute defines the term "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy or pattern." 18 U.S.C. § 3663A(a)(2). Consistent with this definition, restitution under the MVRA "may only compensate a victim for actual losses caused by the defendant's conduct." *United States v. Gamma Tech Industries, Inc.*, 265 F.3d 917, 926 (9th Cir. 2001). "Actual loss" for purposes of restitution "is determined by comparing what actually happened with what would have happened if the defendant had acted lawfully." *United States v. Hunter*, 618 F.3d 1062, 1064 (9th Cir. 2010).

Restitution is limited to losses "directly resulting" from the defendant's criminal conduct. *Gamma Tech*, 265 F.3d at 927 (citing 18 U.S.C. § 3663(a)(2)). The Ninth Circuit has interpreted this to mean that restitution "may be awarded only for losses for which the defendant's conduct was an actual *and* proximate cause." *United States v. Swor*, 728 F.3d 971, 974 (9th Cir. 2013). "'But for' cause is insufficient." *Swor*, 728 F.3d at 974. Accordingly, "the government must show

not only that a particular loss would not have occurred but for the conduct underlying the offense of conviction, but also that the causal nexus between the conduct and the loss is not too attenuated (either factually or temporally)." *Swor*, 728 F.3d at 974 (quoting *Gamma Tech*, 265 F.3d at 928)).

Where, as here, "the offense of conviction involves a scheme, conspiracy, or pattern of conduct, restitution may include all losses caused during the course of that scheme, conspiracy or pattern." *United States v. Thomsen*, 830 F.3d 1049, 1064 (9th Cir. 2016); *Gamma Tech*, 265 F.3d at 927. While restitution in such cases "is not limited to harm caused by the particular counts of conviction," the victim must be "directly harmed by the defendant's conduct" and that harm must "must be closely related to the scheme, rather than tangentially linked." *Thomsen*, 830 F.3d at 1065.

### III. Discussion

#### A. Attorney fees and costs

The primary category of restitution sought by the government in this case consists of the roughly $3.08 million in attorney fees and costs incurred by Vann's ESOP participants in pursuing a civil suit against Nisbet and Manlove.

The Ninth Circuit has held that attorney fees incurred in related civil proceedings may be recoverable pursuant to 18 U.S.C. § 3663A(b)(4), which

authorizes restitution "to reimburse the victim for ... other expenses incurred during participation in the investigation or prosecution of the offense." *United States v. Cummings*, 281 F.3d 1046, 1052 (9th Cir. 2002). Consistent with the legal standards set forth above, restitution for attorney fees may be recoverable if the harm was the "direct and foreseeable result" of the defendant's wrongful conduct. *Cummings*, 281 F.3d at1052. See also *United States v. Gordon*, 393 F.3d. 1044, 1056-57 (9th Cir. 2004); *United States v. DeGeorge*, 380 F.3d 1203, 1221 (9th Cir. 2004).

In August 2013, Vann's bankruptcy trustee, Richard Samson, commenced a civil suit against Nisbet and Manlove on behalf of the bankruptcy estate and the 160 or so participants in Vann's ESOP. Generally speaking, Samson alleged that Nisbet and Manlove breached their ERISA and corporate duties by compensating themselves at the expense of the ESOP participants and driving Vann's into insolvency. See *Richard Samson v. George Manlove & Paul Nisbet*, 9:13-cv-00183-DLC-JCL, Doc. 1. At the restitution hearing, Samson testified that the civil suit eventually settled and he collected $13,404,293.39 on behalf of the ESOP participants and the bankruptcy estate under an applicable liability insurance policy. Of that total recovery, Samson testified that $7,340,313.87 was allocated to the ESOP participants. But because Samson had to retain legal counsel on a

contingency fee basis in order to achieve the settlement, the ESOP participants did not receive that entire amount.  Rather, Samson explained that $3,084,532.83 of the amount allocated to the ESOP participants was disbursed to pay the attorney fees and costs incurred in prosecuting the civil action.  The government argues the ESOP participants should be allowed to recover the roughly $3.08 million in attorney fees as restitution.

To prevail, the government must establish by a preponderance of the evidence that the attorney fees were the direct result of Nisbet's criminal conduct. *Cummings*, 281 F.3d at 1052; *Gordon*, 393 F.3d. at 1057; *DeGeorge*, 380 F.3d at 1221.  Samson agreed that the ESOP participants incurred those attorney fees as a direct result of the Vann's bankruptcy, but was more equivocal on the underlying question of whether the bankruptcy was the direct result of Nisbet's criminal conduct.  To begin with, Samson explained that he was not familiar with the specific allegations in the criminal case and could speak only in terms of Nisbet's and Manlove's general business decisions.  Samson testified that while Nisbet and Manlolve's business decisions may have been one factor that contributed to Vann's bankruptcy some six months later, there were a number of other contributing factors as well.  Pursuant to Nisbet's plea agreement with the government, the actual loss attributed to Nisbet's criminal conduct was $906,300.

The government did not present any evidence establishing that Nisbet's criminal conduct, and the $906,300 actual loss amount to which he stipulated, directly resulted in Vann's bankruptcy, much less the $3.08 million in attorney fees incurred by the ESOP participants in the civil proceedings.

Ultimately, Samson could say only that some unspecified portion of the $3.08 million in attorney fees was directly attributable to Nisbet's criminal conduct. The connection between Nisbet's criminal conduct and the attorney fees incurred by the ESOP participants is too attenuated to support an award of attorney fees as restitution in the total amount requested by the government. The government did not sustain its burden to show what portion, if any, of the attorney fees incurred by the ESOP participants was the direct result of Nisbet's criminal conduct. By simply requesting the totality of the $3.08 million in attorney fees – in the face of Samson's testimony – the government is asking the Court to engage in speculation. Simply put, the government failed to present any evidence that would allow the court to apportion causation to the various factors that caused the demise of Vann's. Consequently, the government's request for restitution in the amount of $3.08 million should be denied.

**B.     Lost wages and loss of share value**

The government is also seeking restitution in the total amount of $435,901

on behalf of five victims identified in the presentence investigation report. The victims are all former participants in Vann's ESOP, and provided written victim impact statements seeking restitution in various amounts for lost wages and/or loss of share value. The five victim impact statements are summarized in the presentence investigation report, which was the only evidence offered by the government in an attempt to establish Nisbet's restitution obligation to these particular victims. The government did not present any expert or other witness testimony on the loss of share value or lost wages, and none of the victims attended or testified at the restitution hearing. The victim impact statements are not supported by any documentation, making it impossible for the Court to assess the accuracy of the loss amounts claimed. Absent any supporting documentation or testimony, the Court finds that the government has not met its burden of establishing by a preponderance of the evidence the amount of the victims' alleged losses, or that the losses were the direct and foreseeable result of Nisbet's criminal conduct. The government's request for restitution in the amount of $435,901 on behalf of the five victims identified in the presentence investigation report should be denied accordingly.

IV. <u>Conclusion</u>

For the reasons set forth above,

IT IS RECOMMENDED that no restitution be imposed against Nisbet.

DATED this 14th day of December, 2016.

/s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge